IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

v.                                                       Case No. 2:13-cr-165

Jonathan Flores Oquendo

<u>Opinioin and Order</u>

This matter is before the Court following supplemental briefing on Defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). Defendant, who is represented by counsel, argues that he is entitled to retroactive application of an amendment to the United States Sentencing Guidelines for offenders with zero criminal history points. For the reasons stated below, the motion is denied.

## I.     Background

Defendant Jonathan Flores Oquendo was a member of an armed robbery conspiracy that committed two car thefts in Ohio. He and his co-conspirators executed a scheme to steal vehicles which were listed for sale on Craigslist. One co-conspirator organized meetings with the sellers and negotiated the purchase price of the vehicles. Defendant and another co-conspirator played the part of "purchasers," who appeared at the arranged meetings and exchanged cash payments in return for possession of the vehicles. Once the purchasers departed the scene with the newly-acquired car, two co-conspirators, who were disguised in masks and armed with assault rifles, followed the victims and robbed them of the cash payments. The co-conspirators fired shots during both robberies to get the sellers' attention and threatened to shoot them to gain compliance. The proceeds of the robberies were shared among the co-conspirators.

Defendant entered into a binding plea agreement pursuant Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. He pleaded guilty to five counts charged in the Information: one count of Conspiracy to Commit Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a), two counts of violating the Hobbs Act under 18 U.S.C. § 1951, and two counts of Discharging a Firearm During the Commission of an Offense of Violence in violation of 18 U.S.C. § 924(c).

The Court accepted the binding plea agreement. On January 3, 2014, the Court sentenced Defendant to 36 months imprisonment on each of Hobbs Act counts, to run concurrently. The Court

1

sentenced Defendant to 300 months total on the two Firearm counts, to run consecutively to the Hobbs Act counts.  Thus, the Court sentenced Defendant to a total term of 336 months imprisonment, as the parties agreed to in the plea agreement.

In May 2021, the Court granted the Government's motion for a reduction in sentence under Rule 35(b).  The total sentence of imprisonment was reduced from 336 months to 308 months.

## II.    The Court's Prior Order

Defendant moved for a seven-month reduction to his sentence based on Amendment 821 to the Sentencing Guidelines, which retroactively made available a two-level reduction in the offense level for offenders with zero criminal history points.[1]  *See* U.S.S.G. § 4C1.1; U.S.S.G. § 1B1.10(d).  Defendant bears the burden of proving by a preponderance of evidence that he is entitled to a sentence reduction.  *See United States v. Cooper*, No. 1:18-CR-97-4, 2024 WL 3093575, at *3 (E.D. Tenn. June 20, 2024) (citing *United States v. Reinberg*, 62 F.4th 266, 268 (6th Cir. 2023)).

In a prior order, the Court laid out the applicable framework for analysis.  *See* Doc. 55.  To summarize, the parties agree that Defendant is a zero-point offender.  *See* PSR, ¶ 68.  The Government contends that Defendant is nonetheless ineligible for the two-level reduction based on the application of subparts (3) and (7) of § 4C1.1(a).  Specifically, the two-level reduction is available only if "the defendant did not use violence or credible threats of violence in connection with the offense" and "the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  U.S.S.G. § 4C1.1(a)(3), (7).

In the original briefing, the parties focused on whether Defendant used violence or threats of violence and on whether he possessed a firearm in connection with the offenses.  The Government argued that Defendant was ineligible for the sentence reduction because he participated in robberies in which threats of violence were made and in which firearms were possessed and because he knew that firearms would be possessed in the commission of offenses.  In contrast, Defendant argued that the plain language of § 4C1.1 did not disqualify him from eligibility because he ("the defendant") did not use violence, make a threat, or possess a firearm in connection with the robberies.

---

[1] Defendant seeks a sentence reduction of seven months because, if applying a two-level reduction in the offense level, his original guideline sentencing range of 33 to 41 months for the Hobbs Act counts would be reduced to 27 to 33 months.  *See* PSR, ¶ 94.

The Court reached a provisional conclusion agreeing with Defendant. The Court found that the language of § 4C1.1(a)(3) and (7) makes a zero-point offender ineligible for the sentence reduction only if the defendant himself is accountable for using violence or a threat of violence or for possessing a firearm. The Court explained:

> As many courts have noted, the language of § 4C1.1(a)'s third and seventh requirements follows the language of one of the requirements of the safety valve provision in § 5C1.2. *See, e.g., United States v. Cooper*, No. 1:18-CR-97-4, 2024 WL 3093575, at *3 (E.D. Tenn. June 20, 2024) ("The § 4C1.1(a)(7) firearm-possession disqualification is based on the safety-valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2."). To receive safety valve relief from mandatory minimum sentences, it must be true that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 5C1.2(a)(2). Because the zero-point offender and the safety valve provisions of the Guidelines use the phrases "the defendant did not use" and "the defendant did not possess," courts have held that they should be applied in the same way. . . .
>
> The Sixth Circuit has held that the safety valve "limits consideration to the defendant's own actions." *United States v. Barron*, 940 F.3d 903, 914 (6th Cir. 2019). This is in contrast to other provisions, like the firearm enhancement under U.S.S.G. § 2D1.1(b), which "'uses the passive voice—requiring enhancement if a firearm "was possessed," ... —and omits any reference to the defendant.'" *Id.* (quoting *In re Sealed Case*, 105 F.3d at 1463 (quoting U.S.S.G. § 2D1.1(b)(1))). Thus, under the safety valve, "the Guidelines specifically 'limit[ ] the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused.'" *Id.* at 915 (quoting U.S.S.G. § 5C1.2 cmt. n.4).

Doc. 55, pp. 2–3.

The Court's review of the evidence found uncontroverted support for Defendant's argument that, even if he was aware the co-conspirators would be possessing and using firearms to rob the sellers of the cash payments, Defendant himself did not make a threat or possess or use a firearm.

> . . . Neither the plea agreement nor the Presentence Investigation Report contain factual content indicating that Defendant himself used violence or a threat of violence or that he possessed a firearm or dangerous weapon in connection with the offense. It was certain co-conspirators who made threats of violence and possessed firearms in committing the robberies. *See* PSR, ¶¶ 17–23. As described in the Presentence Investigation Report, Defendant's role was confined to purchasing vehicles from the sellers. At most, Defendant was aware that two co-conspirators would possess firearms in a separate vehicle (from the one Defendant was in) as they followed the sellers and robbed them. *See id.*, ¶ 22. Defendant's knowledge alone does not establish constructive possession. *See Barron*, 940 F.3d at 916 (defendant must exercise dominion over the firearm).

> The Court, on its own initiative, has reviewed the transcript of the jury trial it conducted of one of Defendant's co-conspirators, Raphael Person, Jr. *See United States v. Person, Jr.*, Case. No. 2:13-cr-217 (S.D. Ohio). Defendant and other co-conspirators provided testimony during the trial of Mr. Person. The testimony given was largely consistent with the factual narrative of the Presentence Investigation Report. Co-conspirator Mickey Velazquez, who planned the two crimes, testified that the assault rifles and ammunition used in the robberies were supplied by Person . . . . *See* Case No. 2:13-cr-217, Doc. 164 at pp. 68–69, 74–75; Doc. 165 at p. 87–88. In the first robbery, Person and Velazquez were the individuals who robbed the car seller of the payment, and they possessed assault rifles and made threats. *See* Doc. 164 at pp. 15–16; Doc. 165 at pp. 132–34. Person fired at least one shot. *See* Doc. 164 at p. 16; Doc. 165 at pp. 132–33. In the second robbery, Person and Chow Lee Velazquez (Mickey's brother) robbed the car seller and likewise possessed assault rifles, made threats, and fired a shot. *See* Doc. 164 at pp. 20, 23, 25; Doc. 166 at pp. 313–14.

*Id.*, pp. 3–4.

The Court further noted that Defendant's testimony in Person's trial supported a conclusion that Defendant's role in both robberies was limited to being present when a co-conspirator exchanged the cash payment for the car. Defendant and the co-conspirator then left the scene, while two other co-conspirators robbed the sellers of the cash. *See id.*, p. 4 ("Defendant arrived and departed from the locations where the car purchases took place in vehicles which were separate from the vehicles which the robbers used to drive to those locations and follow the sellers after the transactions were completed. *See* [Case No. 2:13-cr-217, Doc. 165] at pp. 196–97, 206–07; Doc. 164 at pp. 14, 19, 20, 24. Defendant testified that he did not have any firearms with him in the car. *See* Doc. 165 at p. 197.").

The Court's prior order did not expressly address whether Defendant aided and abetted his co-conspirators' use of threats or possession of firearms, but the same evidence pointed to a conclusion that he did not. Defendant was not present when the threats were made and he did not provide firearms or ammunition to the co-conspirators. These facts caused the Court to conclude at Defendant's sentencing hearing that he was less culpable than the individuals who planned the robberies (Raphael Person, Jr. and Mickey Velazquez) and the individuals who possessed firearms and committed the robberies (Person and Mickey Velazquez in the first robbery; Person and Chow Lee Velazquez in the second). *See* Doc. 28, p. 24. At the sentencing hearing, the Government agreed with that conclusion and said it had no basis to believe that Defendant assisted either in planning how the robberies took place or in providing the firearms. *See id.*, pp. 15, 18.

All of this evidence led the Court to state in the prior order that it "would be inclined to find that, for purposes of § 4C1.1, [Defendant] did not use a threat of violence or possess a firearm in

4

connection with the offense." Doc. 55, p. 4. The Court allowed the parties to submit supplemental briefing, albeit largely to address another issue discussed below. Neither party has raised any additional evidence or argument which would cause the Court to depart from its analysis, and recent case law is consistent with the Court's interpretation of § 4C1.1(a)(3) and (7) as rendering a zero-point offender ineligible for the sentence reduction only if he used violence or a threat of violence or possessed a firearm, or aided and abetted such conduct. *See United States v. Ashrafkhan*, 129 F.4th 980, 987 (6th Cir. 2025) (Section 4C1.1 and the safety-valve provision should be given consistent interpretations); *United States v. Giannantonio*, No. 24-14040, 2026 WL 552804, at *7 (11th Cir. Feb. 27, 2026) ("We see no reason to interpret § 4C1.1(a)(7) differently from the safety-valve provision in § 5C1.2."); *United States v. Garfias*, No. CR 5:19-080-DCR, 2024 WL 457763, at *1 (E.D. Ky. Feb. 6, 2024); *Cooper*, 2024 WL 3093575, at *3 (holding that § 4C1.1(a)(7) "limits accountability to the defendant's own actions").

Accordingly, the Court finds that Defendant did not use violence or a credible threat of violence, nor did he possess a firearm in connection with the offenses. Defendant thus is not rendered ineligible for a sentence reduction by operation of § 4C1.1(a)(3) or of the firearm-possession provision of § 4C1.1(a)(7).

## III. Aiding and Abetting the Transport of Firearms

As outlined in the prior order, the parties had not addressed certain evidence which the Court believed warranted further consideration. There was testimony given at Person's trial that Defendant's car was driven by Person and Chow Lee when they committed the second robbery, which occurred in Middletown, Ohio. And there was testimony that Person and Chow Lee had firearms with them when they drove Defendant's car. *See* Case No. 2:13-cr-217, Doc. 164, pp. 20, 23–24; Doc. 165, pp. 93, 95 (Mickey testifying that Person and Chow Lee Velazquez left for the second robbery in Defendant's car and that they had Person's firearms with them).

This evidence led the Court to find that the firearm-transport provision of § 4C1.1(a)(7) was potentially implicated by Defendant's conduct. Again, for a zero-point offender to receive the two-level reduction, it must be true that he "did not possess, receive, purchase, **transport**, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 4C1.1(a)(7) (emphasis added). The Court observed that "a substantial issue" existed as to whether Defendant aided and abetted the transport of firearms in connection with the offense. Doc. 55, p. 5.

The evidence concerning Defendant's car being used in the Middletown robbery was not part of the record of this case. It was not, for instance, included in the plea agreement or the Presentence Investigation Report, nor was it considered at sentencing. Instead, this fact was adduced at Person's trial, which occurred in October 2015, 21 months after Defendant's sentencing in January 2014.

Because the evidence likely was not considered by counsel when they briefed the motion for a sentence reduction,[2] the Court allowed the parties to file supplemental briefs in response to the evidence and its impact on Defendant's eligibility for a sentence reduction under § 4C1.1(a)(7). *See* Doc. 55, p. 5 ("[T]he interests of fairness require that Defendant be given an opportunity to address the evidence concerning the use of his car in the offense and to present his position on whether the conduct would cause him to be ineligible for the sentence reduction.") (citing *United States v. Are*, 590 F.3d 499, 524 (7th Cir. 2009) ("If a sentencing judge is going to consider evidence from a codefendant's trial, then he should warn the defendant and give him a chance to review the trial transcript.").

In his supplemental brief, Defendant does not dispute that his car was driven by Person and Chow Lee to and from the Middletown robbery. In Person's trial, Defendant took the stand after Mickey had testified. There was evidence that Defendant, Mickey, Person and Chow Lee had gathered at Mickey's house just before they left for Middletown. The Government asked Defendant what car Person and Chow Lee were planning to drive on the night of the second robbery. Defendant answered, "In my car." Case No. 2:13-cr-217, Doc. 165, p. 207. Defendant further testified that Person and Chow Lee did in fact drive his car to Middletown. *See id.*, p. 210 (testifying that he could see his car a couple of cars behind him when he and Mickey were driving to Middletown). Defendant also testified that he saw the pair in his car in Middletown and saw them back at Mickey's house after they had committed the robbery. *See id.*, p. 212 (testifying that he could see Person and Chow Lee in his car parked a little distance away while he and Mickey completed the transaction with the car seller, and testifying that Person and Chow Lee gave the prearranged signal of flashing the headlights of Defendant's car to indicate that they were ready to commit the robbery once Defendant and Mickey departed the scene); p. 213 (testifying that he was at Mickey's house when Person and Chow Lee returned with the money Mickey had used to pay for the car in Middletown).

The issue then becomes whether Defendant aided and abetted the transport of a firearm. *See Barron*, 940 F.3d at 914 (finding that a defendant is accountable for his own conduct and for conduct

---

[2] Current counsel for Defendant and for the Government were not involved in the original proceedings of this case, nor were they involved in the cases brought against the co-conspirators.

that he aided and abetted, in determining eligibility under the safety valve, U.S.S.G. § 5C1.2(a)(2), which uses the same "defendant did not" language as § 4C1.1(a)(7)); *see also* U.S.S.G. § 5C1.2 cmt. n.2. The two essential elements of aiding and abetting are an affirmative act and intent. *See Rosemond v. United States*, 572 U.S. 65, 70–71 (2014) (discussing 18 U.S.C. § 2 and its common law origins). Thus, an aider and abettor is one who "(1) takes an affirmative act in furtherance of [an] offense, (2) with the intent of facilitating the offense's commission." *Id.* at 71; *see also United States v. Soto*, 794 F.3d 635, 661 (6th Cir. 2015).

Defendant does not dispute that providing his car to Person and Chow Lee was an act in furtherance of their transport of the firearms to and from Middletown. In his supplemental brief, Defendant acknowledges the testimony that Person and Chow Lee used his car to transport the firearms. *See* Doc. 58, p. 4 (citing Mickey's testimony). And it is undisputed that they brought the firearms with them in order to commit the armed robbery.

Defendant instead challenges the intent element, arguing that he did not know that Person and Chow Lee would be transporting firearms in his car. Defendant points out that there is no evidence that he communicated with the pair about the firearms before the group left or while they were driving to Middletown. He further points out that he did not stay and witness the firearms being used to rob the seller.

Though the Defendant points to several facts which support his position, the Court finds that the preponderance of the evidence establishes that he was well aware Person and Chow Lee would be transporting firearms in his car. The Court starts with the Presentence Investigation Report. After reciting the facts relating to the first robbery, it states that Defendant was informed of "another robbery scheme using the same method of operation." PSR, ¶ 21. It then states that "[a]gain the defendant agreed to participate in the robbery. [Defendant] Flores Oquendo was aware Raphael Person and Chow Lee Velazquez were armed with AR15 style rifles and intended to rob the sellers of the vehicle. On February 17, 2021, Mickey Velazquez and [Defendant] drove to Middletown, Ohio, . . . where they were followed by Raphael Person and Chow Lee Velazquez . . . ." *Id.*, ¶ 22. Without objection, the Court adopted the findings of the Presentence Investigation Report during Defendant's sentencing hearing. *See* Doc. 28, p. 4.

The testimony given at Person's trial confirmed the Presentence Investigation Report's version of events. The evidence established that the group agreed the Middletown robbery would follow the same method of operation as the first robbery. *See* Case No. 2:13-cr-217, Doc. 164, p. 19 (Mickey testifying that the plan for Middletown was to do "the same thing" as the first robbery); Doc. 165, p.

205 (Defendant's testimony to the same effect). According to the testimony, before the group (comprised of Defendant, Mickey, Person, and Ricardo Velazquez-Flores) left for the first robbery, Mickey and Person possessed firearms and bullets and wore masks and bulletproof vests. *See* Doc. 164, pp. 13, 75 (Mickey's testimony); Doc. 165, pp. 145–46, 177 (Ricardo's testimony); Doc. 165, pp. 195, 198 (Defendant's testimony). Defendant testified that he not only saw Mickey and Person with the rifles before they left for the first robbery, but he also saw them loading the rifles with ammunition. *See* Doc. 165, p. 198. Defendant further testified that when the group reconvened at Mickey's house following the robbery, Mickey and Person "arrived with the money and weapons in hand" and reported they had fired a shot in committing the robbery. *Id.*, pp. 202–03; *accord id.*, p. 156 (Ricardo testifying that when they got back, Mickey and Person said they needed to fire a shot to gain compliance).

Turning to the Middletown robbery, the Court clarifies that at Person's trial, Defendant was not asked – nor did he volunteer – whether he saw firearms in his car. But Defendant did testify that Mickey instructed the group that they "were going to do the same thing" in Middletown as they had done in the first robbery. *Id.*, p. 205. And Defendant agreed that the first robbery was an "armed robbery." *Id.*, p. 235. As the group convened at Mickey's house, Defendant saw Person and Chow Lee wearing bulletproof vests and masks before the group left. *See id.*, pp. 208–09, 218. He knew that Person and Chow Lee would be driving his car. *See id.*, pp. 207–208. Mickey testified that Person brought the rifles to his house, just as Person had done prior to the first robbery. *See id.*, Doc. 164, p. 75; Doc. 165, p. 97. Mickey further testified that the plan for committing the robbery was discussed and the rifles were put into Defendant's car. *See* Doc. 164, p. 23; Doc. 165, pp. 95, 97. When the group returned to Mickey's house after the robbery, Person and Chow Lee had the money and firearms with them. *See* Doc. 165, p. 213 (Defendant's testimony). Person reported that he had fired a shot in committing the robbery. *See id.*, p. 113 (Mickey's testimony).

The Court finds by a preponderance of the evidence that Defendant knew and intended for his car to be used by Person and Chow Lee to transport firearms in connection with the Middletown robbery. Defendant "was aware Raphael Person and Chow Lee Velazquez were armed with AR15 style rifles and intended to rob the sellers of the vehicle." PSR, ¶ 22. Defendant testified that he knew Person and Chow Lee would be driving his car to Middletown. He knew that the plan for the Middletown robbery would be to follow the "armed robbery" model of the first. Consistent with that plan, the group met at Mickey's house before leaving for Middletown. With Defendant present, Person arrived with the firearms and put them into Defendant's car, and Person and Chow Lee were

dressed in masks and bulletproof vests.  The most probable inference to draw from this evidence is that Defendant saw the firearms being put into his car or at least knew they would be.

Because the Court finds from a preponderance of the evidence that Defendant aided and abetted the transport of firearms in connection with the Middletown robbery, Defendant is ineligible for a sentence reduction as a zero-point offender.  *See* U.S.S.G. § 4C1.1(a)(7).

## IV.    Conclusion

Accordingly, defendant's motion for a sentence reduction (Doc. 53) is denied.  Defendant's previous *pro se* motion for a sentence reduction (Doc. 50) is denied as well.


Date: April 13, 2026                                              *s/ James L. Graham*
                                                                              James L. Graham
                                                                              United States District Judge

9